IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

| | |
|---|---|
| KRISTINA RUEHLI, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> )  CIVIL ACTION No. _____ |
| WILLIAM H. COSBY, JR. | ) <br> ) |
| Defendant. | ) <br> ) |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     The Plaintiff was the victim of an attempted rape by Defendant, William H. Cosby, Jr., in 1965.  In 2005, Plaintiff became aware of another victim, Andrea Constand, who had initiated a civil suit against the Defendant to recover for injuries resulting from her own sexual assault by the Defendant, and the Plaintiff came forward anonymously in that lawsuit as another prior victim.  In 2014, as women began to come forward and publicly identify themselves as among the victims of the Defendant's sexual attacks, the Plaintiff also came forward, telling her story to a reporter on November 20, 2014.  The following day, with knowledge that the Plaintiff was joining the women who were telling the stories of their victimization at the hand of a long-admired public entertainer, the Defendant, through agents, issued a press release branding the Plaintiff and the other women who had come forward as fanciful liars.

2.     The statements on behalf of the Defendant, the only other person in the room on the night of his attack of Plaintiff at the young age of 22, were false and defamatory.  It is one

thing for an accused sexual assailant to remain silent and allow the legal process, or public

opinion, to run its course, but it is quite another for him to unleash his agents to deny that he

attacked the Plaintiff and other women, to invite others to republish his statements, and to brand

them as unreliable liars.

    3.     By this action, the Plaintiff seeks a verdict that will vindicate her and her story

after so many years and serve to remedy the emotional distress, reputational damage and other

harm inflicted by Defendant's false and defamatory statements.

## JURISDICTION AND VENUE

    4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiff and

Defendant are citizens of different states and the amount in controversy exceeds $75,000.

    5.     Venue is proper under 28 U.S.C. § 1391(b)(1) as the Defendant resides in

Massachusetts.

## PARTIES

    6.     Plaintiff Kristina Ruehli ("Ms. Ruehli") resides in and is a citizen of New

Hampshire.

    7.     Defendant William H. Cosby, Jr. ("Mr. Cosby") is an actor and comedian who is

known internationally.  On information and belief, Mr. Cosby resides in and is a citizen of

Massachusetts.

## FACTS

### *The Sexual Assault*

    8.     In 1965, at the age of 22, Ms. Ruehli, who was named Donna Czapla at that time,

was employed as a secretary at a talent agency called Artists Agency Corp. ("Artists Agency") in

Los Angeles.

9.     Mr. Cosby came into the Artists Agency office in December 1965.  While there, he said that he was going to be on a television variety show and that he was going to have a party at his home afterwards.  He invited Ms. Ruehli and others to the party.

10.    Ms. Ruehli arrived at Mr. Cosby's home at approximately 10 p.m., expecting that others would have already arrived.  His house was nearly empty.

11.    Mr. Cosby invited Ms. Ruehli in and told her that his wife was out of town.  He brought her to a bedroom where an infant was asleep and showed her the infant.

12.    Ms. Ruehli accepted a drink that Mr. Cosby prepared for her.  Mr. Cosby prepared Ms. Ruehli a second drink.  Shortly after the second drink, Ms. Ruehli passed out.

13.    After an unknown period of time, Ms. Ruehli regained consciousness and found herself on a bed with Mr. Cosby.  She was naked.  Mr. Cosby had his penis in her face and his hand on the back of her head.  He was attempting to place his penis in her mouth and force her to give him oral sex.

14.    As Ms. Ruehli regained consciousness, she immediately became violently nauseated.  She ran to the bathroom and threw up several times.  It was unusual for her to become sick after two drinks.  Based on her own experience and the accounts of other women, Ms. Ruehli came to believe that Mr. Cosby slipped a drug into her drink without her knowledge.

15.    When Ms. Ruehli returned from the bathroom, Mr. Cosby was not there.  Ms. Ruehli dressed, found her way out of the house and went home.

16.    Ms. Ruehli left the talent agency shortly after the attempted rape.  She never saw or spoke to Mr. Cosby again.

***Ms. Ruehli Reveals the Sexual Assault Publicly.***

17.     In 2005, Ms. Ruehli learned that Andrea Constand ("Ms. Constand") had filed

suit against Mr. Cosby alleging she had been drugged and sexually assaulted by Mr. Cosby.  Ms.

Ruehli recognized the similarities between her experience with Mr. Cosby and Ms. Constand's

allegations.  She felt compelled to get in touch with Ms. Constand's lawyer, to tell her story, and

to support Andrea Constand because she, too, had been victimized by Mr. Cosby.

18.     Ms. Ruehli contacted Ms. Constand's attorneys and was one of 13 women

selected from many, many others who alleged they had been drugged and sexually assaulted by

Mr. Cosby.  The 13 women selected were identified in Ms. Constand's lawsuit as "Jane Does."

19.     Ms. Constand's lawsuit settled before Ms. Ruehli had been deposed or gave any

other accounts of her attempted rape.  Ms. Ruehli was known in the lawsuit as a Jane Doe.

20.     In the fall of 2014, having learned of approximately nine other women speaking

out publicly about their own experiences of being drugged and sexually assaulted by Mr. Cosby,

Ms. Ruehli decided to come forward publicly with her own 1965 sexual assault by Ms. Cosby.

She once again recognized the similarity in these women's stories and her own, and it was

important to her to come forward to support them.

21.     On or about November 20, 2014, Ms. Ruehli was interviewed by Philadelphia

Magazine and told her story.

22.     Also on November 20, 2014, Victor Fiorillo, the reporter who interviewed Ms.

Ruehli, called Martin D. Singer ("Mr. Singer"), one of Mr. Cosby's attorneys and his agent, in

order to seek a response on behalf of Mr. Cosby to Ms. Ruehli's allegations.  Mr. Fiorillo did not

reach Mr. Singer and left a message with an assistant.

23.     That same day, Mr. Fiorillo sent an e-mail to John (Jack) Schmitt, another of Mr. Cosby's lawyers and agents, whose name had been associated with Mr. Cosby and Mr. Singer, again, to seek a response from Mr. Cosby.  In the email, Mr. Fiorillo set out the allegations of Ms. Ruehli in substantial detail.

24.     By the telephone call and e-mail to Mr. Cosby's agents, Mr. Fiorillo sought a response to include in his article, which was to run on November 21, 2014.  Ultimately, Mr. Fiorillo received no response, and the article published by Philadelphia Magazine so stated.

25.     On November 21, 2014, at or around 10:08 a.m., Philadelphia Magazine published Ms. Ruehli's story online, under the headline, "Kristina Ruehli Says Bill Cosby Drugged and Tried to Sexually Assault Her in 1965."

### Mr. Cosby Defames Ms. Ruehli.

26.     On November 21, 2014, after Philadelphia Magazine published Ms. Ruehli's story, Mr. Cosby, acting by and through his agent and attorney, Mr. Singer, issued a false and defamatory statement in which he called Ms. Ruehli, along with the other women who had recently told similar accounts of sexual assault by Mr. Cosby, a liar.  The complete text of the statement (the "November 21 Statement") is as follows:

### STATEMENT BY MARTIN D. SINGER
### ATTORNEY FOR BILL COSBY

The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.

These brand new claims about alleged decades-old events are becoming increasingly ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.

Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.

This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop up out of the woodwork. When will it end?

It is long past time for this media vilification of Mr. Cosby to stop.

###

27.    At the time that Mr. Cosby's agent, Mr. Singer, issued this false and defamatory statement, Mr. Cosby and his agents were aware that Ms. Ruehli had contacted the press, specifically Mr. Fiorillo, in order to publicly disclose her story. In the November 21 Statement, the reference to "women who have come forward in the past two weeks" includes Ms. Ruehli, whose allegations were made known to Mr. Cosby's agents, Mr. Singer and Mr. Schmitt, by Mr. Fiorillo the day before the November 21 Statement was issued.

28.    Indeed, as of November 21, 2014 (and continuing to this day), Ms. Ruehli has come forward with the earliest account of sexual assault by Mr. Cosby, with her assault occurring in December 1965, nearly 49 years prior to issuance of the November 21 Statement. On information and belief, the reference to "fantastical stories" from "even 50 years ago" was directed at Ms. Ruehli's allegations, which were published online by Philadelphia Magazine earlier in the day on November 21, 2014, and which Mr. Cosby and his agents knew were to be published by at least November 20, 2014.

29.    Inside Edition broadcast an interview of Ms. Ruehli on November 24, 2014, in which Ms. Ruehli recounts what happened to her in 1965. At the conclusion of the interview, a

reporter states, "In a statement Cosby's attorney denies the allegations calling them ridiculous and unsubstantiated." This statement was repeated in a report of the November 24, 2014 interview published on the internet.

30.     In the false and defamatory November 21 Statement, Mr. Cosby's agent, Mr. Singer, stated explicitly, stated in effect, stated by innuendo, and/or implied that Ms. Ruehli was a liar, that her story had not been and could not be corroborated or verified because it was untrue, and that she and her story were fantastical, ridiculous, and absurd.

### Mr. Cosby Is Directly Liable for Mr. Singer's Defamatory Statement.

31.     The November 21 Statement was issued at Mr. Cosby's direction and/or with his knowledge and/or approval.

32.     At the time of its publication, Mr. Cosby knew that the November 21 Statement was false, he recklessly disregarded the truth of the statement, and/or he negligently disregarded the truth. Indeed, Mr. Cosby knew, or based on his knowledge of his own pattern of drugging and sexually assaulting women beginning *at least* in 1965, had substantial reason to believe and recklessly disregarded, that Ms. Ruehli's account was true.

33.     On information and belief, notwithstanding his knowledge, Mr. Cosby authorized issuance of the November 21 Statement in an effort to discourage other women from coming forward and to salvage his own reputation and career including pending engagements which would earn him substantial income, notwithstanding and/or disregarding any harm issuance of the false and defamatory statement would cause to Ms. Ruehli.

### Mr. Cosby Is Vicariously Liable for Mr. Singer's Defamatory Statement.

34.     At all relevant times, Mr. Singer acted as an agent, authorized representative, attorney, servant, and/or employee of Mr. Cosby, and he acted within the course and scope of his

employment and/or agency.  Specifically, Mr. Singer acted within the scope of his authority in issuing the November 21 Statement on behalf of Mr. Cosby.

35.     Mr. Singer's publication of the November 21 Statement was done negligently and/or with reckless disregard for the truth of the statement.  Specifically, in light of the similar allegations that had been made by approximately ten women at that time, the substantial factual similarity among the accusations, his knowledge that Mr. Cosby had settled a prior suit, and the haste with which Mr. Singer publicly denied Ms. Ruehli's allegations among others, Mr. Singer negligently and/or recklessly published the November 21, 2014 statement as to Ms. Ruehli.

*Publication of the Defamatory Statement*

36.     Mr. Cosby, by and through his agent Mr. Singer, gave this false and defamatory statement to the press for publication.  This was done with the expectation and intent that the statement would be published in numerous media outlets.

37.     This false and defamatory statement was published and republished in numerous print and electronic news outlets throughout the United States and the world.  Such publication and republication was reasonably foreseeable, and in fact, intended, by Mr. Cosby and his agent.

38.     As a foreseeable result of the publication and republication of Mr. Cosby's false and defamatory statement in numerous media outlets concerning Ms. Ruehli, she has been damaged.

<u>COUNT I</u>
<u>Defamation</u>

39.     Plaintiff restates each of the foregoing paragraphs as if fully restated herein.

40.     As set forth above, by and through his authorized attorneys, agents, servants, and/or employees, Mr. Cosby published the November 21 Statement of and concerning Ms. Ruehli which he knew to be false, which he published with reckless disregard for the truth of the

statements and/or negligently.  The November 21 Statement was defamatory and/or defamatory per se.

41.     As set forth above, and in the alternative, Mr. Cosby's authorized attorneys, agents, servants, and/or employees, acting within the scope of their authority, published the November 21 Statement.  They did so with reckless disregard for the truth of the November 21 Statement and/or negligently.  The November 21 Statement was defamatory and/or defamatory per se.

42.     Mr. Cosby's November 21 Statement was printed, published, circulated and distributed to news outlets nationwide and was read by Ms. Ruehli's family, friends, neighbors, world-wide colleagues of her husband, and others.

43.     In making the false and defamatory statements, Mr. Cosby held Ms. Ruehli up to public scorn and ridicule, injured her good name and reputation, and caused her severe emotional distress.

44.     In making the false and defamatory statements, Mr. Cosby acted with hatred, hostility, ill will or evil motive.

45.     Mr. Cosby is liable for the damages his statements have caused and continue to cause, including enhanced compensatory damages.

**WHEREFORE**, Plaintiff Kristina Ruehli respectfully requests that the Court grant her the following relief:

1.     After trial, enter judgment for the Plaintiff and award her damages in an amount to be determined at trial, including attorney's fees, costs and interest; and

2.     Grant such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff Kristina Ruehli hereby demands a trial by jury on all claims so triable.

KRISTINA RUEHLI,

By her attorneys,

/s/ Megan C. Deluhery

Megan C. Deluhery (BBO #655564)
mdeluhery@toddweld.com
Carole C. Cooke (BBO #646000)
ccooke@toddweld.com
TODD & WELD LLP
One Federal St., 27th Floor
Boston, MA 01880
Tel. (617) 720-2626
Fax (617) 227-5777

Dated:  November __, 2015

4835-0416-8234, v. 4