IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
Western Division

_____
                                        )
KRISTINA RUEHLI,                        )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        CIVIL ACTION No. 3:15-cv-13796
                                        )
WILLIAM H. COSBY, JR.                   )
                                        )
        Defendant.                      )
_____)

**PLAINTIFF KRISTINA RUEHLI'S
OPPOSITION TO MOTION TO DISMISS COMPLAINT**

### i.      Introduction

Plaintiff Kristina Ruehli ("Ms. Ruehli") respectfully submits this Opposition to

Defendant William H. Cosby, Jr.'s ("Mr. Cosby") motion to dismiss the Complaint.  In her

Complaint, Ms. Ruehli states a claim for defamation against Mr. Cosby for publicly defaming

her in a statement Mr. Cosby made through his attorney and agent, Martin D. Singer ("Mr.

Singer") to the effect that Ms. Ruehli and ten (10) other women who had publicly disclosed

details of their prior assaults by Mr. Cosby were liars and their accounts were untrue.  In a

related action previously filed by other women who claim to have been defamed by the *very*

*same statement*, this Court has already ruled that the statement IS defamatory, IS of and

concerning the women (like Ms. Ruehli) who had publicly disclosed their allegations leading up

to the publication of the statement, and IS NOT pure opinion.  *Green v. Cosby,* No. 14-30211,

slip op. (Oct. 9, 2015).  A recent First Circuit case cited by Mr. Cosby in an attempt to distract

the Court from the settled law which applied at the time of the original decision, and continues to

apply unchanged, does not require, nor even suggest, that this Court's prior ruling was incorrect, a necessary determination to dismiss the complaint here.  For these reasons, as explained more fully below, Mr. Cosby's motion to dismiss should be denied.

## ii.    Factual Background

### *The Sexual Assault.*

In 1965, at the age of 22, Ms. Ruehli (who was named Donna Czapla at the time) was employed as a secretary at the Artists Agency Corp., a talent agency in Los Angeles.  Complaint, ¶ 8.  In December 1965, while in the agency's offices, Mr. Cosby invited Ms. Ruehli and others to his home for a party.  *Id.,* ¶ 9.  Ms. Ruehli arrived at Mr. Cosby's home on or about 10 p.m., expecting that others would have already arrived, but his house was nearly empty.  *Id.,* ¶ 10.  Mr. Cosby invited Ms. Ruehli in, told her that his wife was out of town, and brought her to a bedroom where an infant was asleep and showed her the infant.  *Id.,* ¶ 11.  Ms. Ruehli then accepted a drink that Mr. Cosby prepared for her.  Mr. Cosby prepared Ms. Ruehli a second drink.  Shortly after the second drink, Ms. Ruehli passed out.  *Id.,* ¶ 12.

After an unknown period of time, Ms. Ruehli regained consciousness and found herself, naked, on a bed with Mr. Cosby.  Mr. Cosby had his penis in her face and his hand on the back of her head.  He was attempting to place his penis in her mouth and force her to give him oral sex.  *Id.,* ¶ 13.  As Ms. Ruehli regained consciousness, she immediately became violently nauseated.  She ran to the bathroom and threw up several times.  It was unusual for her to become sick after two drinks.  Based on her own experience and the accounts of other women, Ms. Ruehli came to believe that Mr. Cosby slipped a drug into her drink without her knowledge.  *Id.,* ¶ 14.  When Ms. Ruehli returned from the bathroom, Mr. Cosby was not there.  Ms. Ruehli

dressed, found her way out of the house and went home.  *Id.*, ¶ 15.  Ms. Ruehli left the talent

agency shortly after the attempted rape.  She never saw or spoke to Mr. Cosby again.  *Id.*, ¶ 16.

### *Ms. Ruehli Reveals the Sexual Assault Publicly.*

In the fall of 2014, having learned of approximately nine other women speaking out

publicly about their own experiences of being drugged and sexually assaulted by Mr. Cosby, Ms.

Ruehli decided to come forward publicly with her own 1965 sexual assault by Ms. Cosby.  *Id.*, ¶

19.  On or about November 20, 2014, Ms. Ruehli was interviewed by Philadelphia Magazine and

told her story.  *Id.*, ¶ 21.  Also on November 20, 2014, Victor Fiorillo, the reporter who

interviewed Ms. Ruehli, called Mr. Singer, one of Mr. Cosby's attorneys and his agent, in order

to seek a response on behalf of Mr. Cosby to Ms. Ruehli's allegations.  Mr. Fiorillo did not reach

Mr. Singer and left a message with an assistant.  *Id.*, ¶ 22.  That same day, Mr. Fiorillo sent an e-

mail to John (Jack) Schmitt, another of Mr. Cosby's lawyers and agents, whose name had been

associated with Mr. Cosby and Mr. Singer, again, to seek a response from Mr. Cosby.  In the

email, Mr. Fiorillo set out the allegations of Ms. Ruehli in substantial detail.  *Id.*, ¶ 23.  By the

telephone call and e-mail to Mr. Cosby's agents, Mr. Fiorillo sought a response to include in his

article, which was to run the following day, on November 21, 2014.  Ultimately, Mr. Fiorillo

received no response, and the article published by Philadelphia Magazine so stated.  *Id.*, ¶ 24.

On November 21, 2014, at or around 10:08 a.m., Philadelphia Magazine published Ms. Ruehli's

story online, under the headline, "Kristina Ruehli Says Bill Cosby Drugged and Tried to

Sexually Assault Her in 1965."  *Id.*, ¶ 25.  Later that day, Mr. Singer issued his false and

defamatory statement concerning Ms. Ruehli and other women.  *Id.*, ¶ 26.

*Mr. Cosby Defames Ms. Ruehli.*

On November 21, 2014, after Philadelphia Magazine published Ms. Ruehli's story, and after Philadelphia Magazine had reached out to Mr. Cosby's agents telling them of Ms. Ruehli's allegations and seeking their comments, Mr. Singer issued the following statement (the "November 21 Statement"):

### STATEMENT BY MARTIN D. SINGER
### ATTORNEY FOR BILL COSBY

The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.

These brand new claims about alleged decades-old events are becoming increasingly ridiculous, and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.

Lawsuits are filed against people in the public eye every day.  There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now ever asserted a legal claim back at the time they allege they had been sexually assaulted.

This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards.  Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop up out of the woodwork.  When will it end?

It is long past time for this media vilification of Mr. Cosby to stop.

### ###

Complaint, ¶ 26.  At the time that Mr. Cosby's agent, Mr. Singer, issued this false and defamatory statement, Mr. Cosby and his agents were aware that Ms. Ruehli had contacted the press, specifically Mr. Fiorillo, in order to publicly disclose her story.  *Id.,* ¶ 27.  As of

November 21, 2014 (and continuing to this day), Ms. Ruehli has come forward with the earliest

account of sexual assault by Mr. Cosby, with her assault occurring in December 1965,

approximately 49 years prior to issuance of the November 21 Statement.  *Id., ¶* 28.

In the false and defamatory November 21 Statement, Mr. Cosby's agent, Mr. Singer,

stated and implied that Ms. Ruehli was a liar, that her story had not been and could not be

corroborated or verified because it was untrue, and that she and her story were fantastical,

ridiculous, and absurd.  *Id., ¶* 30.

### iii.    <u>Argument</u>

#### a.  **Applicable Legal Standard.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.

Twombly,* 550 U.S. 544, 570 (2007).  If the facts alleged are sufficient on each element to "raise

a right to relief above the speculative level," the complaint may not be dismissed.  *Id.* at 555.  In

considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the complaint and

matters of which judicial notice can be taken.  *Nollet v. Justices of the Trial Court of Mass.,*  83 F.

Supp. 2d 204, 208 (D. Mass. 2000), *aff'd,* 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court

must accept all factual allegations in the complaint as true and draw all reasonable inferences in

the plaintiff's favor.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also San Geronimo Caribe

Project, Inc. v. Acevedo-Vila,* 687 F.3d 465, 471 (1st Cir. 2012).  If the facts in the complaint are

sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  *See

Nollet,* 83 F. Supp. 2d at 208.

5

Under New Hampshire law, to state a claim for defamation, a plaintiff must adequately allege facts showing that the defendant failed to exercise the requisite degree of care in "publishing, a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." *Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc.,* 138 N.H. 110, 118 (1993) (reasonable care standard applies to private figures).[1]  *Thomas v. Telegraph Publ'g Co.,* 155 N.H. 314, 340-342 (2007) (constitutional malice standard applies to public figures).[2]  Here, Mr. Cosby apparently concedes for purposes of his motion the sufficiency of Ms. Ruehli's factual allegations regarding all elements of her defamation claim including respondeat superior liability, fault, publication, and damages, and challenges only whether she has adequately pled facts sufficient to show that the statement was "of and concerning" Ms. Ruehli and that it was "fact" rather than non-actionable opinion.  Defendant advances no arguments that were not fully presented and rejected in *Green v. Cosby*.  The motion fares no better here.

---

[1] New Hampshire substantive law applies because the defamatory statement was published in New Hampshire and Ms. Ruehli was domiciled in New Hampshire at the time of the publication.  *See Green,* slip op., p. 9 ("The law of the state where the defamed person was domiciled at the time of publication applies 'if the matter complained of was published in that state.'") (citation omitted).  The Complaint alleges that the false and defamatory November 21 Statement was given to the press for publication with the expectation and intent that it would be published in numerous media outlets and that it was published and republished in numerous print and electronic new outlets throughout the United Sates and the world.  Complaint, ¶¶ 36-37.  The Defendant does not contest, for purposes of his motion to dismiss, that New Hampshire law applies.  *See* William H. Cosby Jr.,'s Memorandum in Support of Motion to Dismiss, p. 4.  For purposes of the issues raised in Defendant's motion, it is noteworthy that New Hampshire law is no different than California or Florida law, which the Court applied in denying his motion in *Green v. Cosby*.

[2] The Defendant has not raised the issue of whether Ms. Ruehli is a public or private figure in its motion to dismiss.  Accordingly, to the extent that this issue has any relevancy at all to the determination of this motion, this Court may assume at this stage of the litigation that Ms. Ruehli is a private figure.  *See Green,* slip op., p. 29.

**b.  According to the Well-Pled Allegations of the Complaint, the November 21 Statement Was Of and Concerning Ms. Ruehli.[3]**

Considering the timing of the events surrounding the November 21 Statement and the words in the statement, it is unquestionable that a reasonable reader would interpret the statement to be of and concerning Ms. Ruehli.  *See Stanton v. Metro Corp.,* 438 F.3d 119, 128-129 (1st Cir. 2006) (in determining whether a statement is capable of being interpreted to be of and concerning the plaintiff, the court should consider all the words used and the context); *Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977) ("…a defamatory statement [may] appl[y] to all members of a small group"); Restatement (Second) of Torts § 564A, cmt. b. Philadelphia Magazine's article concerning Ms. Ruehli (entitled, "Kristina Ruehli Says Bill Cosby Drugged and Tried to Sexually Assault Her in 1965") was published online at or around 10:08 a.m. on November 21, 2014, *prior* to the time when Mr. Singer issued his statement, at a time when there were eleven (11) accusers who had published their accounts.[4]  Complaint, ¶¶ 20, 26; *see also* Declaration of Joseph Cammarata, Esq. at ¶ 2 submitted in *Green* case (Doc. No. 32-1, p. 6).  As this Court has already determined, when presented with an affidavit of Ms. Green's counsel that eleven other women (including Ms. Ruehli) had made public their accounts prior to November 21, nothing in the November 21 Statement "indicated an intention to exclude any recent accusers from its sweep…."  *Green v. Cosby*, slip. op., p. 28.

---

[3] Defendant asserts the same legal theories here as he advanced, and the Court rejected, in *Green*.  He points to no different law applicable in New Hampshire and identifies no new case law that alters the legal analysis since this Court's decision in the *Green* case.

[4] Readers on November 21 would only have been aware of the prior publication of Ms. Ruehli's account, and then Mr. Cosby's response (through Mr. Singer).  However, additional allegations in the Complaint bolster the proper conclusion on the instant motion that the statement was of and concerning Ms. Ruehli, including the contacts made by Philadelphia Magazine to two of defendant's attorneys, including Mr. Singer, seeking a comment prior to publication of Ms. Ruehli's account.  *See* Complaint at ¶¶ 22-23.  What the Complaint does *not* allege, and which cannot be considered on a Rule 12 motion, is that Mr. Cosby or Mr. Singer intended a narrow reading of the November 21 Statement to be "of and concerning" only certain other women.

In sum, while the November 21 Statement does not refer to Ms. Ruehli by name, it clearly references her.  It refers to claims "from women who have come forward in the past two weeks" and states that their stories concern events that "occurred 30, 40, or even 50 years ago." As alleged in the Complaint and described above, Ms. Ruehli came forward on November 20th, the day before Mr. Cosby made the statement through his attorney, which was within the prior "two weeks" referenced in the statement.  Furthermore, as of November 21, 2014 (and indeed to this day), Ms. Ruehli came forward with the earliest account of sexual assault by Mr. Cosby, hers having occurred *49 years* prior to the issuance of the November 21 Statement.  Thus, a reasonable reader could have interpreted the reference to alleged events occurring "even 50 years ago" as a direct reference to Ms. Ruehli.

In Mr. Cosby's Memorandum in Support of his Motion to Dismiss, he states, "[I]t is not even clear that the Defendant or his representatives knew about Plaintiff's locally-published interview" at the time of Mr. Singer's statement.  William H. Cosby Jr.,'s Memorandum in Support of Motion to Dismiss ("Def. Memo"), p. 2.  Yet, the Complaint alleges that two of Mr. Cosby's agents (including Mr. Singer himself) were informed of Ms. Ruehli's claims prior to the publication of Mr. Singer's statement.  Complaint, ¶¶ 22-25.[5]  *See Ashcroft v. Iqbal,* 556 U.S. at 678 (well-pled allegations must be taken as true).

 In any case, for purposes of this element of the claim on a motion to dismiss, what matters is what a reasonable reader might possibly infer from reading the November 21 Statement and its context, not what the defendant intended.  *See Chagnon v. Union Leader Corp.*, 103 N.H. 426, 437 (1961) (a plaintiff must ultimately prove how the statement could be

---

[5] Although entirely unnecessary, Ms. Ruehli stands prepared to amend her Complaint to allege that the very same day her story was published, local and national press outlets showed up at her home and called her by phone.  Mr. Cosby's allegation that her accusations received only local attention cannot be seriously maintained.

"reasonably understood by the readers").  This Court correctly found that a reasonable reader could conclude the November 21 Statement was "of and concerning" Therese Serignese and Linda Traitz, the accounts of these women having been published two and three days prior to Mr. Cosby's statement, respectively.  *Green*, slip op. at 28.  In the case of Ms. Ruehli, the inference is even stronger that the November 21 Statement referenced her, given that she was the only accuser whose story went back "50 years."

Mr. Cosby argues that "no reader of the Philadelphia Magazine article could reasonably conclude that the November 21 Statement readily refers to Plaintiff."  Def. Memo, p. 11.  In support, he asserts that Mr. Singer "issued his comments in response to a *Washington Post* interview of five **other** accusers to be published the next day, November 22, 2014." *Id.,* pp. 1, 3 (emphasis added).  Mr. Cosby provides no citation or documentary evidence whatsoever to support this factual assertion.  Of course, this Court must ignore this counter-allegation from the Defendant in his motion because it is not included in the Complaint, in documents attached as exhibits or incorporated by reference in the Complaint, nor is it a matter of which judicial notice may be taken.  *Nollet,* 83 F. Supp. 2d at 208; *see also Rodi v. Southern New England School of Law,* 389 F. 3d 5, 12 (1st Cir. 2004) (in considering a motion to dismiss, court excluded from consideration affidavits and documents attached to briefs); *Freeman v. Town of Hudson,* 849 F. Supp. 2d 138, 147-148 (D. Mass. 2012) (same).  Further, it is a quizzical argument to suggest a reasonable reader of the statement on November 21 would believe it concerned a Washington

Post story which Mr. Cosby alleges was not even published until *the following day*.[6]  The

statement is properly alleged to be of and concerning the Plaintiff.

### c.  The November 21 Statement Was Not Pure Opinion But Implied the Existence of Undisclosed, Provable Facts and Hence Is Actionable.

Mr. Cosby's primary argument for dismissal is that the November 21 Statement is one of

"opinion" and hence is not actionable.  Just as when advanced in the *Green* case, the argument

fails.

### (i)  Viewed in Their Context, Mr. Singer's Words Were Not Vague and Subjective Opinion, but an Assertion of Fact, Requiring Denial of the Motion.

Mr. Cosby argues that the words "fantastical," "absurd[]" and "ridiculous"  are "loose,

figurative, hyperbole" with no precise meaning, and as such, they are not actionable because they

express a subjective view rather than objectively verifiable facts.  Def. Memo, p. 7.  Defendant

made the same argument in *Green*, and this Court rightly disagreed.  *Green*, slip op., p. 24.

Where words can be interpreted as either fact or opinion, a Rule 12 motion fails.  *Green*, slip op.,

pp. 29-30 (citing California law); *Bourne v. Arruda,* No. 10-CV-393-LM, 2011 WL 2357504, at

*4 (D. N.H. June 10, 2011), *aff'd* (1st Cir. Oct. 1, 2013) (where average reader could reasonably

understand statement to be either pure opinion or based on undisclosed facts, it should be left to

the jury).  In analyzing an alleged defamatory statement, it is not appropriate to pluck individual

words from the statement and analyze them in a vacuum; the statement must be read as a whole

---

[6] Although the Court cannot consider the bare assertion that Defendant intended the November 21 Statement as a response to some future publication (where the allegation is not in the Complaint and the statement itself is not self-limiting), Defendant's argument is disingenuous at best, given that the November 22, 2014 Washington Post article explicitly mentions Ms. Ruehli's claims, thus demonstrating that if Mr. Singer were attempting to provide a statement as to the allegations in the November 22, 2014 article, he was indeed referring to Ms. Ruehli and her claims.

and in context. *Green*, slip op., p. 27; *see also Nash v. Keene Publ'g Corp.,* 127 N.H. 214, 219 (1985).

"[T]he standard to be used is based upon the *average* person, and if that average reader or hearer could reasonably understand a statement as actionably factual"—that is capable of being proven true or false—"then there is an issue for a jury's determination, precluding dismissal or summary judgment." *Godfrey v. Perkin-Elmer Corp.*, 794 F. Supp. 1179, 1191 (D.N.H. 1992) (emphasis in original). Here, the reasonable factual connotation is that Ms. Ruehli's account is false—not just that she is a liar, but that she told a lie. As in *Green*, this can be proven true or false and the statement is, consequently, actionable.

As discussed above, a reasonable reader would have understood the November 21 Statement to concern all allegations made by the eleven women to come forward up to that point in time, including Ms. Ruehli. As this Court has held in *Green* concerning this statement, "implicit in [the first two paragraphs] of the statement is the suggestion that the cause of the accusers' decades of silence was that they did not really believe they had been assaulted." *Green,* slip op., p. 27. Whether Ms. Ruehli's claims were fabricated is "provable as true or false." *Id.,* p. 22. Thus, this Court should reject Defendant's argument (as it did in *Green*) that this was a statement of opinion based solely on the disclosed fact of the length of time that had passed between the alleged assaults and the accusations. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) (newspaper column actionable where it implied that plaintiff perjured himself in a judicial proceeding, a factual assertion susceptible of being proved true or false); *Levinsky's, Inc. v. Wal-Mart Stores*, 127 F.3d 122, 127 (1st Cir. 1997) (even if a statement is purportedly one of opinion, it is actionable if it declares or implies a provably false statement of fact); *Cook v. Winfrey*, 141 F.3d 322, 329-30 (7th Cir. 1998) (under Ohio law, where plaintiff alleged Oprah

11

Winfrey had had a sexual relationship with him and used illegal drugs, defendant's statement that plaintiff was a "liar" and his subsequent lawsuit a "pack of lies" was actionable); *McNamee v. Clemens*, 762 F. Supp. 2d. 584, 601-602 (E.D.N.Y. 2001) (Roger Clemens' statement that plaintiff, who had claimed to have personally administered steroids to him, was a liar was actionable).

**(ii)      Alternatively, the November 21 Statement Implied the Existence of Undisclosed, Defamatory Facts.**

Even if the statement could be read only to express pure opinion as a matter of law (a position the Court has already rejected), this would not end the matter.  Even an opinion may be actionable if it implies a basis in undisclosed facts which can be proven true or false.  *Green*, slip. op. at 17-18.  *See, e.g., Thomas*, 155 N.H. at 338-339; *Nash v. Keene Publ'g,* 127 N.H. at 219-220.  Accordingly, this Court held in *Green* that if the statement contains or implies facts, and those facts are susceptible to being proved true or false, "Defendant cannot avoid application of defamation law by claiming the statement expresses only opinion."  *Green,* slip op.*,* p. 18.

As he did in *Green*, Mr. Cosby contends that he fully disclosed the basis of Mr. Singer's opinion by pointing to her failure to report Mr. Cosby to criminal authorities or to file a civil suit against him at the time.  The Court rejected this argument then, as it should now, because the statement implies the existence of additional, undisclosed information—namely Mr. Cosby's personal knowledge and undisclosed "documentary evidence"—which Mr. Singer, due to his unique position as Mr. Cosby's attorney, possesses which entitles him to brand Ms. Ruehli a liar and her allegations lies.  *See Green*, slip. op. at 28 ("The court cannot predict whether a jury will actually conclude the statement implied that fact [that the allegations were false and entirely without merit] and, if so, whether the assertion of fact was false, but there is a sufficient factual

12

question as to the meaning readers would have given to the statement to preclude dismissal at
this stage.").

Like the defendant in *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990)*,* and unlike the
defendant in *Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724 (1st Cir. 1992)*,* a
reasonable reader of the November 21 Statement would understand that Mr. Singer was
"uniquely situated" to know the facts. *See Phantom Touring,* 953 F.2d at 730-731 ("a reader
reasonably could have understood the reporter in *Milkovich* to be suggesting that he was
singularly capable of evaluating the plaintiffs' conduct" whereas no such impression was created
by the writer in *Phantom Touring*).  Mr. Cosby surely knew (whether) the sexual assault had
occurred, as well as the surrounding facts asserted by Ms. Ruehli concerning when and where
she met him, that he had an infant daughter that he showed off to her, that he gave her two
drinks, that she passed out, that she vomited and left the house.  As Mr. Cosby's attorney, who
had already been involved in addressing other accusations by other women, Mr. Singer was
uniquely situated to know the truth or falsity of Ms. Ruehli's allegations directly from Mr. Cosby
himself, and a reasonable reader could (indeed would) no doubt understand this in reading the
November 21 Statement.  *See, e.g., Green,* slip op., p. 26 (discussing the November 20
Newsweek statement and stating, "[A]t this stage it appears that a jury could conclude that the
source of the statement – a person close to the subject of the allegation – made the statement in
order to communicate the fact that Plaintiff Traitz's allegations were lies.").

As the Court is aware from Plaintiffs' briefing in *Green*, this case is analogous to *Tomson
v. Stephan*, 696 F. Supp. 1407 (D. Kan. 1988) ("*Tomson I*") in which the plaintiff settled a claim
of sexual harassment and later sued the alleged perpetrator (the Attorney General) and his

13

advisor for false light publicity[7] after they held a news conference in which the advisor stated that the plaintiff's original action was "totally without merit" and that the allegations were "preposterous" and "totally unfounded."   696 F. Supp. at 1410.   The court rejected the contention that the statement was nonactionable opinion:

> [T]he statements that [plaintiff's] original action was "without merit" and "totally unfounded" must be interpreted as statements of fact. Neither [the Attorney General] nor [his advisor] prefaced their statements with the phrase "in my opinion." They did not qualify their statements in any way. Instead of stating that they "believed" the suit to be "without merit" or "totally unfounded," they stated that they *were* baseless. **Coming not from an objective third party analyzing the legal merits of the case, but instead from the party with actual knowledge of the facts of the case and from one of that party's closest advisors, the statements translate into this: "[The Attorney General] did not sexually harass [the plaintiff]; he did not make sexual advances toward her, and he did not make offensive sexual comments to her."** Regardless of whether this statement is true or false, **it is certainly a statement of fact and not one of opinion.** It will be for a jury to determine whether the statement is true. In the meantime, summary judgment is inappropriate.

*Tomson I,* 696 F. Supp. at 1412 (emphasis added).   Subsequently, upon denying a motion for reconsideration, the court stated:   "It is reasonable to assume that one claiming to have personal knowledge of the facts giving rise to the case, or at least to have closely advised the defendant in the case, would be asserting as fact that the case was 'without merit'" rather than expressing an opinion.   *Tomson v. Stephen,* 699 F. Supp. 860, 861 (1988) ("*Tomson II*").   Similarly, here, a reasonable reader not perceive Mr. Singer's statement to be made based on such obvious, public information as whether or not Ms. Ruehli had ever made a criminal or civil complaint at the time, but rather, as someone very close to the subject, speaking after access to Mr. Cosby and information he has which is not disclosed.

---

[7] As the *Tomson* court noted, while the torts of false light publicity and defamation differ in terms of the redress they seek, they are both premised on the publication of a false factual statement.   *Tomson,* 696 F. Supp. at 1411. Hence, the *Tomson* case is apposite to this case.

Second, the November 21 Statement states that Mr. Cosby has refuted prior allegations with "documentary evidence" and implies that such evidence can be assembled, once again, to refute Ms. Ruehli's account.  The reasonable interpretation is that this "documentary evidence" will be forthcoming which will support the statements made by Mr. Cosby through the statement:  that Ms. Ruehli is a liar and her story unverifiable.  The statement directly references and otherwise implies the existence of undisclosed facts.

In sum, the November 21 Statement implies the existence of undisclosed facts which are provably true or false, hence it is actionable.  Although Mr. Singer mentioned the length of time that had elapsed and the failure of Ms. Ruehli to come forth publicly at an earlier date, he also implied, and a reader would reasonably infer, that there were additional factual bases for his statement.  Given his role as Mr. Cosby's attorney, the statement implied that he knew the "truth" that no sexual assault had occurred and also that he had some (undisclosed) documentary evidence to prove it.

### d.   The Recent First Circuit Opinion (*Piccone v. Bartels*) Does Not Change the Analysis.

Aware that the arguments he advances here are exactly the same as those fully addressed and disposed of in *Green* as to the exact same publication, Defendant argues that there has been a change in well-established defamation law that warrants a different result in this case. Specifically, Defendant claims that *Piccone v. Bartels,* 785 F.3d 766 (1st Cir. 2015) somehow "clarifies" *Milkovich* and requires a different outcome here.  *Piccone,* however, is fully in keeping with *Milkovich* and other well-established law in holding that where an opinion is based

15

only on disclosed, true facts, it is not actionable.[8]  *See Piccone,* 785 F.3d at 771 ("the speaker can

immunize his statement from defamation liability by *fully disclosing* the non-defamatory facts on

which his opinion is based.") (emphasis added).  *See also Pease v. Telegraph Publ'g Co.,* 121

N.H. 62, 66 (1981) (where factual basis for statement was fully disclosed, the facts were shown

to be true, and *no other facts were implied*, the statement was not actionable); *Yohe v. Nugent,*

321 F.3d 35, 41-42 (1st Cir. 2003) (statement based on disclosed nondefamatory facts is not

actionable); *Bourne,* 2011 WL 2357504 at *4 ("If the opinion is based upon a fully disclosed

factual basis, and cannot be reasonably understood to imply the existence of any other

undisclosed facts, then the opinion will not be deemed actionable.").  *Cf. Thomas,* 155 N.H. at

339 (2007) (opinions based upon *undisclosed* facts resulting from unspecified investigations

were actionable).  In effect, the law is what it has always been: an opinion is actionable if it

implies an untrue factual statement; however, if a conclusory statement of opinion discloses all

facts upon which it relies and those facts are true, there is no implied untrue factual statement

and it is not actionable.  This is not news.

     In considering the "opinion" issue in *Green,* this Court correctly applied the analysis set

forth by the U.S. Supreme Court in *Milkovich.*  As this Court noted, *Milkovich* declined to create

a constitutional privilege for all statements that might be labeled "opinion."  *Green,* slip op., p.

17.  *Milkovich* "rejected an artificial dichotomy between opinion and fact … because expressions

of opinion may nonetheless imply an underlying objective evaluation that is susceptible of being

---

[8] Defendant argues that the *Piccone* decision demonstrates that this Court's analysis in *Green* was faulty.  By way of excusing the fact that he did not bring that decision to this Court's attention while the *Green* motion to dismiss was pending, Mr. Cosby notes that the *Piccone* opinion was issued on May 7, 2015, a month after the parties completed their briefing in the *Green* case.  However, Mr. Cosby also apparently failed to bring the opinion to this Court's attention at oral argument on June 22, 2015 or via supplemental briefing while the motion was under advisement.  This was no inadvertence; *Piccone* represents no change in the law.

proved true or false." *Faigin v. Kelly,* 978 F. Supp. 420, 424 (D. N.H. 1997) (quoting *Milkovich*, 497 U.S. at 19, 21). Under *Milkovich,* a court must inquire whether a reasonable reader of the statement could conclude that the allegedly defamatory statement, which might otherwise be read as a statement of opinion, implies an assertion of fact. If it does, and the implied assertion is susceptible of being proved true or false, the litigation may advance. If an "average reader or hearer could reasonably understand a statement as actionably factual, then there is an issue for a jury's determination, precluding dismissal or summary judgment." *Godfrey,* 794 F. Supp. at 1191 (citing *Nash,* 127 N.H. at 219). This law has been in place for years.

*Piccone* is not helpful to Defendant because here, Defendant failed to disclose *all* of the facts a reasonable reader would believe exist to support his purported opinion. Not only does the November 21 Statement *imply* the existence of undisclosed facts (Mr. Cosby's personal knowledge which Mr. Singer, due to his unique position as Mr. Cosby's attorney, had access to), it *explicitly refers to* undisclosed facts ("Over and over again, we have refuted these new unsubstantiated stories with documentary evidence…."). That Mr. Singer reveals some of the facts upon which the statement may be based (such as the age of the allegations and the fact that Ms. Ruehli did not report the matter to law enforcement or sue) does not negate or somehow render superfluous the existence of additional undisclosed facts, wherein lies the power and potency of the statement. Simply put, where Mr. Singer states he has undisclosed "documentary evidence" and implies he knows facts the reader does not, and where he is in a unique position to be in possession of undisclosed facts the existence of which he alludes to in his statement, his statement that Ms. Ruehli is a liar is actionable.

### (iii)   The November 21 Statement Was Defamatory.

Mr. Cosby also argues that "[c]alling Plaintiff a liar is not defamatory."  Def. Memo, p. 7. This Court correctly rejected that argument in *Green,* ruling that "to falsely accuse another of sexual assault is morally repugnant; the natural result of the publication of a statement directly or indirectly indicating Plaintiffs made such false accusations is injury to their reputation."  *Green,* slip op., 28.  Moreover, the cases cited by Mr. Cosby in which one litigant called another litigant's claims "baseless" are inapposite.  First, none were decided under New Hampshire law and all involved situations where a lawsuit was pending.  While New Hampshire recognizes a litigation privilege, it only applies to statements made in the course of judicial proceedings that are pertinent to the subject of the proceeding.  *See McGranahan v. Dahar,* 119 N.H. 758, 763 (1979).  Here, when Mr. Singer published the November 21 Statement, there was no litigation pending.  *See, e.g., Green,* slip op., p. 21 ("at the time [the November 20 Newsweek] statement was made there was no pending litigation between Defendant and Plaintiff Green.  Some readers may have understood any statement from Defendant to have been predictably self-serving, but there was no litigation pending when a publicist for Defendant provided the statement to the media.").  Hence, this Court should rule as it did in *Green,* that a reasonable jury could find that Mr. Singer's statement was defamatory and not privileged.

### iv.   <u>Conclusion</u>

For the foregoing reasons, Mr. Cosby's motion to dismiss the complaint should be denied.

Respectfully submitted,

KRISTINA RUEHLI

By her attorneys,


/s/ Carole C. Cooke
Megan C. Deluhery (BBO# 655564)
Carole C. Cooke (BBO# 646000)
TODD & WELD LLP
One Federal Street
27th Floor
Boston, MA 02110
Phone: (617) 720-2626
mdeluhery@toddweld.com
Dated:  February 16, 2016                               ccooke@toddweld.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2016, a true copy of the above *Plaintiff Kristina Ruehli's Opposition to Motion to Dismiss* was filed in accordance with the Court's Electronic Filing Guidelines and will be sent to all counsel of record by operation of the Court's electronic filing system.


/s/ Carole C. Cooke